**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-22100-RAR**
**Case No. 25-cv-22202-RAR**

**PHILIP MARTIN**, *et al.,*
*individually and on behalf of*
*all others similarly situated,*

      Plaintiffs,

v.

**BINANCE HOLDINGS, LTD.**
*d/b/a* **BINANCE**, *et al.*

      Defendants.

_____/

**CHARLES BARATTA**, *et al.,*
*individually and on behalf of*
*all others similarly situated,*

      Plaintiffs,

v.

**BINANCE HOLDINGS, LTD.**
*d/b/a* **BINANCE**, *et al.*

      Defendants.

_____/

**<u>DEFENDANTS' MOTION TO COMPEL ARBITRATION</u>**

## <u>TABLE OF CONTENTS</u>

Page

I.  INTRODUCTION ....................................................................................................1

II.  PROCEDURAL HISTORY OF RELATED CASES ............................................5

A.  *Osterer* Is Filed in This Court on Behalf of the Putative Class ...............5

B.  While the Arbitration Motion Was Pending, Plaintiffs' Counsel Sought Leave to Add the *Martin* Plaintiffs and a RICO Claim ...........................6

C.  The Court Found Plaintiffs' Claims Rely on BHL's Terms, Compelled Arbitration, and Denied Leave to Amend as Moot....................................7

D.  Plaintiffs Attempt to End-Run the *Osterer* Arbitration Order by Filing Two Copycat Complaints in the Western District of Washington...................................7

E.  Judge Rothstein Finds *Martin* and *Baratta* Are Substantially Similar to *Osterer* ....................................................................................................9

III.  ARGUMENT .......................................................................................................10

A.  Because the Claims in *Martin* and *Baratta* Are Based on the Same Factual Predicate and Concern the Same Central Issues as *Osterer*, the *Martin* and *Baratta* Plaintiffs Should Likewise Be Compelled to Arbitration.........................10

1.  Legal Standard .............................................................................10

2.  As the *Osterer* Arbitration Order Held, a Valid Agreement to Arbitrate Exists Under the Doctrine of Equitable Estoppel.....................11

B.  Plaintiffs Should Be Judicially Estopped from Asserting Their Claims Are Different from Those in *Osterer* ..........................................................13

C.  Plaintiffs Should Be Compelled to Arbitrate Their Claims Based on Collateral Estoppel Principles.................................................................15

1.  The Issue of Arbitrability Was Presented in the Prior Proceeding, Necessary to the Prior Determination, and Actually Litigated in *Osterer* ........................................................................................15

2.  The Parties Are Sufficiently Similar........................................16

D.  BAM and Mr. Zhao May Invoke the Arbitration Provision to Compel Plaintiffs to Arbitrate .............................................................................18

IV.  CONCLUSION....................................................................................................19

V.  REQUEST FOR HEARING................................................................................19

VI.  S.D. FLA. L.R. 7.1(A)(2) CERTIFICATION ...................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Attix v. Carrington Mortg. Servs., LLC*,
    35 F.4th 1284 (11th Cir. 2022) .......................................................................................10

*Baratta v. Binance Holdings, Ltd.*,
    2025 WL 1383369 (W.D. Wash. May 13, 2025)..................................................................3

*Boneta v. Am. Med. Sys., Inc.*,
    524 F. Supp. 3d 1304 (S.D. Fla. 2021) (Ruiz, J.) ...........................................................15

*Brown v. Zabala*,
    2025 WL 1392212 (11th Cir. May 14, 2025) .............................................................15, 16

*California v. Texas*,
    459 U.S. 1096 (1983)......................................................................................................17

*Caporicci U.S.A. Corp. v. Prada S.p.A.*,
    2018 WL 2264194 (S.D. Fla. May 7, 2018) ...................................................................18

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)........................................................................................................10

*Green Tree Fin. Corp.- Alabama v. Randolph*,
    531 U.S. 79 (2000)..........................................................................................................10

*Herrera v. West Flagler Assocs., Ltd.*,
    2017 WL 9324515 (S.D. Fla. Apr. 5, 2017) ...................................................................18

*Inetianbor v. CashCall, Inc.*,
    923 F. Supp. 2d 1358 (S.D. Fla. 2013) ..........................................................................11

*Integrated Sec. Servs. v. Skidata, Inc.*,
    609 F. Supp. 2d 1323 (S.D. Fla. 2009) ..........................................................................10

*JPay, Inc. v. Kobel*,
    904 F.3d 923 (11th Cir. 2018) ........................................................................................10

*Martin v. Binance Holdings, Ltd.*,
    2025 WL 1159213 (W.D. Wash. Apr. 21, 2025)................................................................3

*Meadows v. Am. Airlines*,
    2024 WL 5248006 (S.D. Fla. Oct. 22, 2024), *report and recommendation
    adopted sub nom. Meadows v. Am. Airlines, Inc.*, 2024 WL 5245945 (S.D.
    Fla. Dec. 30, 2024)..........................................................................................................14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ...................................................................................................10

*Osterer v. BAM Trading Servs. Inc.*,
    753 F. Supp. 3d 1289 (S.D. Fla. 2024) ...................................................................2

*Physician Consortium Servs., LLC v. Molina Healthcare, Inc.*,
    414 F. App'x 240 (11th Cir. 2011) ........................................................................18

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
    531 U.S. 497 (2001) ...............................................................................................15

*Slater v. United States Steel Corp.*,
    871 F.3d 1174 (11th Cir. 2017) ......................................................................13, 14

*Taylor v. Sturgell*,
    553 U.S. 880 (2008).................................................................................16, 17, 18

*United States v. Munoz*,
    112 F.4th 923 (11th Cir. 2024) ..............................................................................14

**State Cases**

*Fernandez v. Cruz*,
    341 So. 3d 410 (Fla. 3d DCA 2022) .......................................................................16

*Marquardt v. State*,
    156 So. 3d 464 (Fla. 2015).......................................................................................15

**Federal Statutes**

9 U.S.C. § 3.................................................................................................................10

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ............................................................10

**Rules**

Southern District of Florida Local Rule
    7.1(A)(2) ...............................................................................................................20
    7.1(b)(2) ...............................................................................................................19

Defendant Binance Holdings, Ltd., BAM Trading Services Inc., and Changpeng Zhao ("Defendants") respectfully move the Court to enter an order compelling arbitration of the above-captioned actions. In support of this motion, Defendants state as follows:

## I.    **INTRODUCTION**

In a related case, *Michael Osterer v. Binance Holdings, Ltd., et al.* ("*Osterer*"),[1] this Court found that the claims of the named plaintiff and similarly situated putative class members are subject to mandatory individual arbitration. Osterer sought to hold Defendants Binance Holdings, Ltd. ("BHL") and BAM Trading Services Inc. ("BAM") liable for cryptocurrency purportedly stolen from his Coinbase account by unknown hackers, which, allegedly, was eventually transferred to Binance.[2] Osterer claimed that BHL and BAM are liable to him and the putative class because BHL knowingly ignored Know Your Customer and Anti-Money Laundering policies, knew that fraudulent activity was occurring on its exchange, and had the ability to freeze the fraudulent transactions, but did not do so in order to collect transaction fees.

BHL and BAM moved to compel arbitration in *Osterer* under equitable estoppel principles, arguing that *Osterer's* theory of liability—that BHL had the ability to stop the fraudulent transactions, but intentionally did not do so to collect transaction fees—relies on rights created by the Binance.com Terms of Use ("Terms"). Therefore, Osterer and the putative class are bound by the Terms, which includes mandatory arbitration and class waiver provisions.

While the motion to compel arbitration was pending, Osterer sought leave to amend his complaint to add additional named plaintiffs and a RICO cause of action. These additional named

---

[1] Changpeng Zhao was not named as a defendant in *Osterer*.

[2] As the Court noted in its Order granting the defendants' motion to compel arbitration in *Osterer*, BAM operates "a separate and independent" exchange, Binance.US. [*Osterer*, ECF No. 71, at 1-2.]

1

plaintiffs and additional causes of action rely on the same basic facts and same theory alleged by Osterer. Osterer and the proposed new plaintiffs acknowledged this to the Court and represented they would be accordingly bound by the Court's order on the motion to compel.

This Court in *Osterer* granted the motion to compel arbitration, denied the motion for leave to amend as moot, and explicitly rejected Plaintiffs' argument that the claims are based on statutory rights, not the Terms. [*Osterer*, ECF No. 71 ("*Osterer* Arbitration Order"), which is reported as *Osterer v. BAM Trading Servs. Inc.*, 753 F. Supp. 3d 1289 (S.D. Fla. 2024)]. The Court held that "Plaintiff is suing Defendants for failing to exercise a right created by the Terms [freezing the hackers' accounts]—and for collecting funds pursuant to the Terms" [*id.* at 8] and compelled "Plaintiffs . . . to arbitrate their claims" [*id.* at 11].

In an apparent effort to circumvent the Court's order in *Osterer*, counsel for Osterer and the putative class filed two duplicative class action complaints in the Western District of Washington. These new class actions were filed on behalf of the *same* putative class, based on the *same* central facts and issues and almost identical allegations, against the *same* defendants. The first of these cases, *Martin et al. v. Binance Holdings, Ltd. et al.* ("*Martin*"), was filed on behalf of the same plaintiffs—Philip Martin, Yatin Khanna, and T.F. (Natalie) Tang (the "*Martin* Plaintiffs")—who previously sought leave to join *Osterer* and represented to the Court that their claims are materially the same as Osterer's and they would be bound by the *Osterer* Arbitration Order.[3] Defendants, among other things, moved the Honorable Barbara J. Rothstein of the Western District of Washington to transfer *Martin* back to this Court pursuant to the first-to-file-rule. While the motion to transfer was pending, Plaintiffs' Counsel initiated the second copycat action, *Baratta*

---

[3] The *Martin* docket [ECF No. 34] reflects service of the summons and complaint upon Mr. Zhao on September 18, 2024.

2

*v. Binance Holdings, Ltd.* ("*Baratta*"),[4] on behalf of Plaintiffs Charles Baratta, Jason Rappaport, Donald Douty, Thomas Viola, and Hyacinth Ahuruonye (the "*Baratta* Plaintiffs") (collectively with the *Martin* Plaintiffs, "Plaintiffs").

Judge Rothstein saw *Martin* and *Baratta* for what they are: attempts to forum shop and evade this Court's *Osterer* Arbitration Order. Judge Rothstein ruled that the parties and issues in *Martin* are substantially similar to the claims in *Osterer* and transferred *Martin* to this Court. [*Martin*, ECF No. 75, which is reported as *Martin v. Binance Holdings, Ltd.*, 2025 WL 1159213 (W.D. Wash. Apr. 21, 2025)].

Similarly, Judge Rothstein later entered an order granting the *Baratta* parties' stipulated motion to transfer *Baratta* to this Court. Notably, rather than rubberstamp the parties' proposed transfer order [*see Baratta*, ECF No. 12], Judge Rothstein prepared and issued a reasoned order holding that her "reasoning in *Martin* that transfer of that action was necessary to promote efficiency and avoid duplicative litigation is equally applicable [to *Baratta*]." [*Baratta*, ECF No. 14 at 3, which is reported as *Baratta v. Binance Holdings, Ltd.*, 2025 WL 1383369 (W.D. Wash. May 13, 2025)]. In other words, Judge Rothstein held that the parties and claims in *Baratta* are substantially similar to those in *Osterer*.

After *Martin* and *Baratta* were transferred to this Court, the Court issued the Order Consolidating Cases [*Martin*, ECF No. 108 ("Consolidation Order")] finding that *Martin* and *Baratta* were both transferred to this Court "under the first-to-file rule based on common issues of law and fact with *Osterer*"; consolidating *Martin* and *Baratta* for purposes of the Motion to Compel Arbitration Motion; and administratively closing *Baratta*.

---

[4] Mr. Zhao has not been served in the *Baratta* case.

At bottom, two courts have already held that, regardless of any additional causes of action or newly named plaintiffs, *Martin* and *Baratta* are substantially similar to *Osterer*. The *Martin* Plaintiffs admitted as much to this Court before attempting to refile in Washington. Accordingly, the reasoning set forth in the *Osterer* Arbitration Order applies with equal force to the consolidated cases now before the Court. Specifically, each of the three actions—*Osterer*, *Martin*, and *Baratta*—concerns a putative class whose members had their cryptocurrency stolen by third-party hackers and allegedly deposited into a BHL account, seeking to hold Defendants liable under the theory that Defendants could have prevented the transactions, but did not in order to collect transaction fees. As this Court held in *Osterer*, Plaintiffs' theory relies on BHL's ability to (1) freeze user accounts and (2) collect fees, which are rights created by the Terms, and thus Plaintiffs' claims must be arbitrated pursuant to the Terms' individual arbitration provision under the principles of equitable estoppel.

Plaintiffs attempt to distinguish *Martin* and *Baratta* from *Osterer* by (1) omitting the unjust enrichment claim alleged in *Osterer* and (2) adding a RICO cause of action and, in *Baratta*, additional state law causes of action. Judge Rothstein rejected these efforts to distance the cases from *Osterer*:

> Plaintiffs' attempts to distinguish this case from *Osterer* do not change the fact that the two cases arise from the same factual predicate and concern the same central issue. . . . It is apparent from comparing the factual allegations in the [*Osterer* and *Martin*] Complaints that the central issue in both cases is whether the relevant defendants may be held responsible for acting in a manner that enabled hackers to launder cryptocurrency through Binance.com.

[*Martin*, ECF No. 75 at 6-7.]

Indeed, Plaintiffs should be estopped from arguing otherwise. The *Martin* Plaintiffs sought leave to file an amended complaint naming them as additional plaintiffs, adding BHL's former CEO—Changpeng Zhao—as a defendant, and adding a RICO cause of action. [*Osterer*, ECF No.

62 ("Motion for Leave")]. The *Martin* Plaintiffs repeatedly averred to this Court that they are part of the same putative class as Osterer and they "have been injured by [Defendants'] same wrongful practices," [*id.* at 1-2] and that the additional allegations and RICO claim are based on the "same wrongful conduct alleged in the initial [*Osterer*] Complaint" [*id.* at 6-7].

Accordingly, the same result should follow here. The Court should find that Plaintiffs' claims are subject to the Terms' mandatory individual arbitration provision and grant Defendants' Motion to Compel.

## II.   PROCEDURAL HISTORY OF RELATED CASES

### A.   *Osterer* Is Filed in This Court on Behalf of the Putative Class

In the first-filed complaint, on June 5, 2023, Plaintiffs' Counsel filed a complaint on behalf of Michael Osterer and a putative class (the "*Osterer* Complaint") against BHL and BAM, asserting claims for conversion, aiding and abetting conversion, and unjust enrichment. [*Osterer*, ECF No. 1.] Osterer alleged that unidentified third-party hackers infiltrated his Coinbase account, stole his cryptocurrency, deposited the cryptocurrency in BHL accounts, and then ultimately withdrew the funds. [*Id.* ¶¶ 76-81.] Osterer alleged that the financial harm he and the class suffered as a result of this theft was a "direct and proximate result of [BHL]'s policies and failures" [*id.* ¶ 84], and that BHL and BAM are liable because BHL "had the ability to freeze those accounts and stop transactions," and "could have" but did not do so "for the purpose of earning [BHL] transaction fees" [*id.* ¶¶ 73-75].

BHL and BAM moved to compel arbitration of these claims on equitable estoppel grounds, arguing that Osterer's individual and class claims are based on rights created by BHL's Terms of Use—the right to freeze accounts and charge transaction fees—and, therefore, he was also bound by the Terms' arbitration and class waiver provisions. [*Osterer*, ECF No. 49 ("*Osterer* Arbitration Motion").]

In Osterer's opposition to the *Osterer* Arbitration Motion, [*Osterer*, ECF No. 52], his chief argument was that the claims are not premised on BHL's ability to freeze accounts and collect fees (thus not premised on the Terms), but are based on BHL's "practices that led to Plaintiff and Class Members' losses," including, Defendants' "inadequate KYC and AML protocols"; policy allowing deposits and withdrawals of up to 2 Bitcoin per day without verification; and "lack of internal controls" and tracing policies. [*Id.* at 8.]

## B. While the Arbitration Motion Was Pending, Plaintiffs' Counsel Sought Leave to Add the *Martin* Plaintiffs and a RICO Claim

While the *Osterer* Arbitration Motion was pending, Osterer filed a Motion for Leave [*Osterer*, ECF No. 62 ("*Osterer* Motion for Leave")] and attached a proposed amended complaint [*Osterer*, ECF No. 62-1 ("*Osterer* Amended Complaint")], which sought to add (1) the *Martin* Plaintiffs as named plaintiffs, (2) BHL's former CEO, Changpeng Zhao, as a defendant, (3) a RICO claim, and (4) additional detail regarding the government proceedings Osterer relied on in opposing arbitration. The *Martin* Plaintiffs assured the Court that "the proposed amendments in no way would alter the Court's analysis of the pending motion to compel arbitration." [*Osterer* Motion for Leave at 5.] They argued that the *Martin* Plaintiffs, ***and "all other members for the proposed Class . . . all have been injured by the same wrongful practices of Defendants as Plaintiff Osterer was***." [*Id.* at 1-2 (emphasis added).] Similarly, the *Martin* Plaintiffs represented that "the new facts alleged" "strengthen [the] existing claims while not altering the balance of the arguments for or against arbitration." [*Id.* at 6; *Osterer*, ECF No. 64 at 4 ("*Osterer* Motion for Leave Reply").]  Additionally, the *Martin* Plaintiffs argued "these new allegations . . . support RICO claims against Defendants for the same wrongful conduct alleged in the initial Complaint." [*Osterer* Motion for Leave at 6-7.] Ultimately, the *Martin* Plaintiffs argued leave would promote

efficiencies because they "will be in a better position to move expeditiously" to arbitrate if the Court compels it. [*Osterer* Motion for Leave Reply at 5.]

**C.** **The Court Found Plaintiffs' Claims Rely on BHL's Terms, Compelled Arbitration, and Denied Leave to Amend as Moot**

The Court granted the *Osterer* Arbitration Motion and issued the *Osterer* Arbitration Order, agreeing that because Osterer alleged Binance failed to "halt the further movement of [Plaintiff's] stolen property, … Plaintiff is suing Defendants for failing to exercise a right created by the Terms—and for collecting funds pursuant to the Terms." [*Osterer* Arbitration Order at 8.] Accordingly, the Court held Osterer was equitably estopped from "rely[ing] upon the [Terms] to establish [his] claim while avoiding [his] obligations under the [Terms] to arbitrate such claims." [*Id.* at 8-9.] The Court rejected Osterer's argument that his claims and the claims of the putative class are rooted in a statutory scheme. [*Id.* at 10.] The Court explained that "Defendants' failure to freeze the deposited funds has no connection to Defendant's failure (or statutory obligation) to properly identify customers or trace the origin of deposited funds. . . . And determining whether Defendants had the ability and obligation to freeze funds will require referencing . . . of the Terms." [*Id.*] The Court ordered, *inter alia*, that: (1) "Plaintiffs are **COMPELLED** to arbitrate their claims against Defendants pursuant to the Terms"; and (2) "Plaintiff's Motion for Leave . . . is hereby **DENIED AS MOOT**." [*Id.* at 11.]

**D.** **Plaintiffs Attempt to End-Run the *Osterer* Arbitration Order by Filing Two Copycat Complaints in the Western District of Washington**

Disregarding their prior representations to this Court, Plaintiffs filed two copycat complaints in the Western District of Washington—*Martin* and *Baratta.* For instance, the proposed class is identical [*compare*, *Martin* Compl. ¶ 202 and *Baratta* Compl. ¶ 253, *with Osterer* Am. Compl. ¶ 205]; the Defendants are the same [*compare*, *Martin* Compl. ¶ 175 and *Baratta* Compl. ¶ 224, *with Osterer* Am. Compl. ¶ 178]; and the alleged facts and issues are nearly identical

[*compare*, *Martin* Compl. ¶¶ 211-259 and *Baratta* Compl. ¶¶ 266-333, *with Osterer* Am. Compl. ¶¶ 214-264]. [*See* Declaration of Christopher LaVigne ("LaVigne Decl."), Ex. 1 (Redline comparison of *Martin* Compl. and *Osterer* Am. Compl.; and Ex. 2 (Redline comparison of *Baratta* Compl. and *Osterer* Am. Compl.)].[5]

Indeed, the *Martin* and *Baratta* Complaints are near carbon-copies of the *Osterer* Amended Complaint except that the Plaintiffs tried to superficially plead around the *Osterer* Arbitration Order. **First**, Plaintiffs, in conclusory fashion, allege they "are not relying on any contracts or agreements entered into between Binance or BAM" to establish their claims. [*E.g.*, *Martin* Compl. ¶ 10, *Baratta* Compl. ¶ 11.] **Second**, they merely rephrased (without any material change) their allegations regarding BHL's ability to freeze accounts and collect fees. For instance, whereas the *Osterer* Complaint alleged that BHL "had the ability to freeze those accounts and stop transactions . . . Binance failed to interrupt the money laundering process when it could have done so" [*Osterer* Compl. ¶¶ 73-74], the *Martin* and *Baratta* complaints allege that Defendants "made no effort to utilize reasonable measures" to stop transactions on the Binance.com exchange involving the same alleged stolen cryptocurrency [*see Martin* Compl. ¶¶ 242, 255; *Baratta* Compl. ¶¶ 299, 312].

**Third**, Plaintiffs' Counsel tried to sanitize the *Martin* and *Baratta* Complaints by removing explicit references to BHL's ability to collect transaction fees by omitting terms like "ill-gotten gains" and "disgorgement." However, *Martin* still seeks restitution [*Martin* Compl. ¶ 12], and both *Martin* and *Baratta* still allege that Defendants failed to stop the alleged hackers from transacting on the Binance.com exchange due to their desire to collect "massive" transaction fees. [*See, e.g.*, *Martin* Compl. ¶ 36 ("Binance has a strong monetary incentive to encourage. . . transactions

---

[5] The LaVigne Declaration and its Exbibits (1-4) are attached as **Exhibit A**.

involving stolen cryptocurrency."); *id.* ¶ 171 ("Defendants generated massive amounts of fees" from "their conspiracy and fraudulent scheme"); *id.* ¶ 183 ("The Binance Crypto-Wash Enterprise functions by generating fees from cryptocurrency transactions by customers."); *Baratta* Compl. ¶ 232 ("Binance did not implement adequate KYC or AML policies so that Binance.com could generate massive fees and liquidity from the maximum number of people and increase market share[.]").]

E.      **Judge Rothstein Finds *Martin* and *Baratta* Are Substantially Similar to *Osterer***

Plaintiffs' efforts do not alter what this Court already determined: no matter how artfully Plaintiffs attempt to reframe their claims, they still derive from the Terms. [*See Osterer* Arbitration Order at 8.] Judge Rothstein agreed, finding that the parties and issues in *Martin* are substantially similar to those in *Osterer*. Specifically, Judge Rothstein held that "[a]lthough the two Complaints describe the proposed classes in slightly different terms, both encompass the same proposed class of individuals whose cryptocurrency was stolen and transferred to a Binance.com account during the relevant period" and "are [thus] sufficiently similar[.]" [*Martin*, ECF No. 75 at 5.] Judge Rothstein also held the addition of Mr. Zhao as a defendant does not change that the defendants in *Osterer* and *Martin* are substantially similar.

Judge Rothstein explicitly rejected Plaintiffs' argument that "the issues in [*Martin*] are dissimilar from those in *Osterer*, because unlike in *Osterer*, the Complaint here (1) does not allege unjust enrichment, and (2) adds a RICO claim." [*Id.* at 6.] Judge Rothstein held:

> The Court is unpersuaded. ***Plaintiffs' attempts to distinguish this case from Osterer do not change the fact that the two cases arise from the same factual predicate and concern the same central issue.*** . . . Indeed, the *Osterer* Complaint and *Martin* Complaint contain numerous identical or nearly identical allegations. . . . It is apparent from comparing the factual allegations in the two Complaints that the central issue in both cases is whether the relevant defendants may be held responsible for acting in a manner that enabled hackers to launder cryptocurrency through Binance.com.

[*Id.* at 6-7 (emphasis added; citations omitted).]

Similarly, Judge Rothstein entered an order transferring *Baratta* to this Court, finding that her "reasoning in *Martin* that transfer of that action was necessary to promote efficiency and avoid duplicative litigation is equally applicable [to *Baratta*]." [*Baratta*, ECF No. 14 at 3.]

### III.   ARGUMENT

**A.   Because the Claims in *Martin* and *Baratta* Are Based on the Same Factual Predicate and Concern the Same Central Issues as *Osterer*, the *Martin* and *Baratta* Plaintiffs Should Likewise Be Compelled to Arbitration**

#### 1.   Legal Standard

The Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. (the "FAA"). Under the FAA, a district court must grant a motion to compel arbitration if it is satisfied that there is an "issue referable to arbitration under an agreement in writing for such arbitration[.]" *See* 9 U.S.C. § 3; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration . . . ."); *see also JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018).

Given the FAA's liberal policy favoring arbitration, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). "[A]ny doubts" concerning the arbitrability of a dispute "should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1294 (11th Cir. 2022).

Under the FAA, a district court must compel arbitration if (1) a valid written agreement to arbitrate exists, (2) an arbitrable issue exists, and (3) the right to arbitrate has not been waived. *Integrated Sec. Servs. v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1324 (S.D. Fla. 2009). A plaintiff

challenging the enforcement of an arbitration agreement must establish, by substantial evidence, any defense to the enforcement of the agreement. *Inetianbor v. CashCall, Inc.*, 923 F. Supp. 2d 1358, 1362 (S.D. Fla. 2013). Here, all three of these factors compel arbitration.

### 2. As the *Osterer* Arbitration Order Held, a Valid Agreement to Arbitrate Exists Under the Doctrine of Equitable Estoppel

At the outset, the first and third factors are met because the Court has already held (and Plaintiffs did not dispute) that the arbitration provision of the Terms is a valid clickwrap agreement [*see Osterer* Arbitration Order at 6-7], and Defendants have not waived their right to arbitrate.

The second factor is also met because Plaintiffs' claims are subject to the arbitration provision under the principles of equitable estoppel. "[U]nder the doctrine of equitable estoppel, a party may compel arbitration against a non-signatory to a contract if the 'plaintiff is relying on a contract to assert its claims and . . . the scope of the arbitration clause in that contract covers the dispute.'" [*Osterer* Arbitration Order at 6 (*citing Leidel v. Coinbase, Inc.*, 729 F. App'x 883, 887 (11th Cir. 2018)).]

***First***, as explained above, like named class plaintiff Osterer, Plaintiffs here rely on the Terms to establish their claims. Plaintiffs' theory of liability is that (1) BHL could have, but did not, "use reasonable measures" to stop the alleged money laundering, and (2) it did so knowingly, to earn "massive" transaction fees. [*Supra* § II.D.] This Court already held that BHL's right to stop customer transactions and to collect fees on those transactions derives from the Terms. [*See Osterer* Arbitration Order at 8 ("Plaintiff is suing Defendants for failing to exercise a right created by the Terms—and for collecting funds pursuant to the Terms.")]. Although Plaintiffs attempt to scrub any reference to BHL's ability to "freeze" accounts, they cannot avoid that their claims are based on BHL's ability to "preven[t] the crypto belonging to Plaintiffs and the members of the Class from being laundered and withdrawn from Binance.com." [*Martin* Compl. ¶ 50; *Baratta*

Compl. ¶ 82.) Indeed, Plaintiffs ask that Defendants "freez[e] all cryptocurrency [belonging] to Plaintiffs and the Class[.]" [*Martin* Compl. at p. 72; *Baratta* Compl. at 81.]

Furthermore, Plaintiffs' claims still rely on BHL's ability to collect transaction fees, which is a right that derives solely from the Terms. [*See, e.g.*, *Martin* Compl. ¶ 36 ("Binance has a strong monetary incentive to encourage. . . transactions involving stolen cryptocurrency."); *id.* ¶ 171 ("Defendants generated massive amounts of fees" from "their conspiracy and fraudulent scheme"); *id.* ¶ 183 ("The Binance Crypto-Wash Enterprise functions by generating fees from cryptocurrency transactions by customers."); *Baratta* Compl. ¶ 232 ("Binance did not implement adequate KYC or AML policies so that Binance.com could generate massive fees and liquidity from the maximum number of people and increase market share[.]").]

***Second***, Plaintiffs cannot escape arbitration by claiming their claims are based on statutory obligations. Indeed, this Court already considered and flatly rejected this argument in the *Osterer* Arbitration Order. The Court held:

> Plaintiff argues that his claim only arises from Know Your Customer and Anti-Money Laundering rules, as well as Defendants' failure to create or comply with adequate internal policies. But . . . Plaintiff's claims "derive" from the underlying Terms. Plaintiff specifically alleges in his Complaint that Binance failed to "halt the further movement of [Plaintiff's] stolen property." . . . Plaintiff is suing Defendants for failing to exercise a right created by the Terms—and for collecting funds pursuant to the Terms.

[*Osterer* Arbitration Order at 8 (internal citations omitted).] The Court further held:

> [A]lthough Plaintiff does allege that Defendants failed to comply with Know Your Customer and Anti-Money Laundering protocols and tethers certain allegations to similar statutory obligations, **Plaintiff also alleges that Binance failed to "halt the further movement of [Plaintiff's] stolen property."** This particular allegation regarding Defendants' failure to freeze the deposited funds has no connection to Defendant's failure (or statutory obligation) to properly identify customers or trace the origin of deposited funds. Nor does Plaintiff attempt to make such a connection. And determining whether Defendants had the ability and obligation to freeze funds will require referencing § II(D)(1) of the Terms.

[*Id.* at 10 (internal citations omitted and emphasis added).]

Despite superficial revisions, the core theory underlying the allegations in *Martin* and *Baratta* remains identical. Plaintiffs allege that BHL failed to "preven[t] the crypto belonging to Plaintiffs and the members of the Class from being laundered and withdrawn from Binance.com" [*Martin* Compl. ¶ 50; *Baratta* Compl. ¶ 82], and this failure was motivated by a desire to generate "massive amounts of fees" [*Martin* Compl. ¶ 171; *Baratta* Compl. ¶ 220].

Plaintiffs have admitted that the addition of statutory claims does not alter the analysis. [*Supra* § II.B; *Osterer* Motion for Leave at 6-7; *Osterer* Motion for Leave Reply at 5.] Judge Rothstein agreed and held the different causes of action asserted in *Martin* and *Baratta* do not change that both "cases arise from the same factual predicate and concern the same central issue" as *Osterer*. [*Martin*, ECF No. 75 at 6-7.]

Thus, Plaintiffs' claims fall squarely within the Terms' broad and all-encompassing arbitration provision, which mandates that "any" claim, "whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory," "arising in connection with or relating in any way to" the Terms "will be determined by mandatory final and binding individual (not class) arbitration" [LaVigne Decl., Ex 3 (Fracolli Decl.) at ¶ 15, Ex. 2 § X.2; *Osterer* Arbitration Order at 10 ("[T]he arbitration provision at issue is broad in scope . . . requiring arbitration of claims 'arising in connection with or relating in any way to these Terms.'")]

Accordingly, the Court should compel Plaintiffs to arbitrate their claims pursuant to the Terms.

### B.   Plaintiffs Should Be Judicially Estopped from Asserting Their Claims Are Different from Those in *Osterer*

The equitable doctrine of judicial estoppel is intended to "prevent the perversion of the judicial process" and "protect [its] integrity . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Slater v. United States Steel Corp.*, 871 F.3d

1174, 1180 (11th Cir. 2017) (citations omitted).  This doctrine rests on the principle that "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Id.* at 1180-81. When applying judicial estoppel, district courts in this Circuit consider (1) "the plaintiff's actions—whether he made inconsistent statements—and" (2) "his motive—whether he intended to make a mockery of the judicial system." *Id.* at 1181; *United States v. Munoz*, 112 F.4th 923, 935 (11th Cir. 2024) (describing the "mockery" inquiry as "whether the plaintiff actually intended to manipulate the judicial system to his advantage"). There are no "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Slater*, 871 F.3d at 1181.

Here, Plaintiffs' Counsel represented "unequivocally" to this Court that their allegations in the *Osterer* Amended Complaint, which is identical to the *Martin* Complaint [*see Martin*, ECF No. 75 at 6-7; LaVigne Decl. Ex. 1], do "not [alter] the balance of the arguments for or against arbitration" [*Osterer* Motion for Leave at 6; *Osterer* Motion for Leave Reply at 4]. They also averred that the *Martin* Plaintiffs' and class members' allegations and injuries are based on the same wrongful conduct by Defendants [*Osterer* Motion for Leave at 1-2], and the "same wrongful conduct alleged in the initial [*Osterer*] Complaint" [*id.* at 6-7]. Plaintiffs also agreed that an order compelling arbitration on named class plaintiff *Osterer* would have the same force and effect on them. [*Id.* at 5.] Plaintiffs should be estopped from taking the opposite position simply to avoid arbitration and the *Osterer* Arbitration Order. *See, e.g., Meadows v. Am. Airlines*, 2024 WL 5248006, at *8 (S.D. Fla. Oct. 22, 2024), *report and recommendation adopted sub nom. Meadows v. Am. Airlines, Inc.*, 2024 WL 5245945 (S.D. Fla. Dec. 30, 2024) (holding a plaintiff was judicially estopped from arguing he is an employee of defendant company when he argued in a prior litigation that defendant terminated him as an employee).

14

### C.     Plaintiffs Should Be Compelled to Arbitrate Their Claims Based on Collateral Estoppel Principles

Florida state law[6] recognizes collateral estoppel, or issue preclusion, which precludes a litigant from re-litigating an issue that has been previously decided. Collateral estoppel consists of five elements: (1) the identical issue was presented in a prior proceeding; (2) the issue was a critical and necessary part of the prior determination; (3) there was a full and fair opportunity to litigate the issue; (4) the parties to the prior action were identical to the parties of the current proceeding; and (5) the issue was actually litigated. *Marquardt v. State*, 156 So. 3d 464, 481 (Fla. 2015). All five elements are satisfied here.

### 1.     The Issue of Arbitrability Was Presented in the Prior Proceeding, Necessary to the Prior Determination, and Actually Litigated in *Osterer*

The first element is satisfied because the issue presented here (the arbitrability of Plaintiffs' claims), was presented in the *Osterer* Arbitration Motion. As explained above, [*see, supra* § II.D], despite their best efforts to omit and reword allegations to distance themselves from *Osterer*, the

---

[6] The preclusive effect of a judgment rendered by a federal court sitting in diversity is governed by federal common law, which in turn incorporates the law of the state where the rendering court sits. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09 (2001); *Boneta v. Am. Med. Sys., Inc.,* 524 F. Supp. 3d 1304, 1319 (S.D. Fla. 2021) (Ruiz, J.) (same). Because Plaintiffs alleged diversity jurisdiction, the preclusive effect of the *Osterer* Arbitration Order is governed by Florida law, unless Florida law is "incompatible with federal interests." *Lockheed Martin*, 531 U.S. at 509. Here, federal law is virtually identical regarding collateral estoppel. *See Brown v. Zabala*, 2025 WL 1392212, at *3 (11th Cir. May 14, 2025) ("The following conditions must be present for a federal court to apply collateral estoppel: (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.").

material facts and theory underlying their claims remain the same. And importantly, Plaintiffs have represented to this Court that the claims and issues are the same. [*Supra*, § II.B.]

Similarly, the second, third, and fifth elements are satisfied because the issue of arbitrability of Plaintiffs' claims was (naturally) a critical and necessary part of the Arbitration Motion and was fully and fairly litigated resulting in the well-reasoned *Osterer* Arbitration Order. Indeed, this Court considered this exact argument—including that the *Martin* Plaintiffs' and the class's claims arise from statutory rights, not BHL's Terms—and explicitly rejected it when issuing the Arbitration Order. [*See generally Osterer* Arbitration Order; *supra*, § III.B.; *see also Martin*, ECF No. 75 at 6-7.]

### 2.      The Parties Are Sufficiently Similar

The fourth collateral estoppel element—that the parties in the proceedings are identical—is also satisfied, even though the *Martin* Plaintiffs were denied leave to join as named plaintiffs in *Osterer* and the *Baratta* Plaintiffs were not named plaintiffs. As an initial matter, Judge Rothstein already recognized the mutuality of the parties, holding that

> Although the [*Martin* and *Osterer*] Complaints describe the proposed classes in slightly different terms, both encompass the same proposed class of individuals whose cryptocurrency was stolen and transferred to a Binance.com account during the relevant period. . . . [E]ven with [Mr.] Zhao added as a defendant, the parties in the two actions are substantially similar."

[*Martin*, ECF No. 75 at 5.]

Further, both Florida and federal law recognize the mutuality of parties requirement is not a strict requirement, and has well-recognized exceptions. *See Fernandez v. Cruz*, 341 So. 3d 410, 414 (Fla. 3d DCA 2022) (recognizing that preclusion doctrines' requirement for mutuality of parties is not strictly enforced and has been dispensed "where special fairness or policy considerations appear to compel it"); *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) (under federal law, a nonparty may be precluded by a prior order in several circumstances); *see also Brown*, 2025

WL 1392212, at *4 ("[T]he Supreme Court has eliminated the mutuality requirement 'in applying collateral estoppel to bar relitigation of issues decided in earlier federal-court suits.'") (*citing Allen v. McCurry*, 449 U.S. 90, 94-95 (1980)).

Among others, the Supreme Court has recognized three exceptions pursuant to which Plaintiffs are bound by the *Osterer* Arbitration Order.

***First***, "'[a] person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement.'" *Sturgell*, 553 U.S. at 893-94; *California v. Texas*, 459 U.S. 1096, 1097 (1983) (dismissing certain defendants from a suit based on a stipulation "that each of said defendants . . . will be bound by a final judgment of this Court" on a specified issue). As discussed above, Plaintiffs represented to this Court that the *Martin* Complaint and *Osterer* Amended Complaint are based on the same claims and theory of liability, and the *Martin* Plaintiffs agreed that an order compelling arbitration on one would have the same force and effect on the other. (*Supra,* § III.B). Therefore, they agreed to be bound by the *Osterer* Arbitration Order.

***Second***, "a nonparty may be bound by a judgment because she was adequately represented by someone with the same interest who was a party to the suit." *Sturgell*, 553 U.S. at 894 (cleaned up). The Plaintiffs concede this point as well. There can be no question that Osterer has the same interest as the Plaintiffs here because the *Martin* Plaintiffs sought to be added as additional named plaintiffs on behalf of the same class and claim that they have all been injured by the same wrongful practices by Defendants. (*See Osterer* Motion for Leave at 1-2.) Nor can the Plaintiffs argue against the adequacy of representation because their current counsel represented them in *Osterer* and in the Western District of Washington.

17

*Third*, "a nonparty is bound by a judgment if [he] assumed control over the litigation in which that judgment was rendered. Because such a person has had the opportunity to present proofs and argument[s], he has already had his day in court even though he was not a formal party to the litigation." *Sturgell*, 553 U.S. at 895 (cleaned up). The *Martin* Plaintiffs filed their Motion for Leave to join as additional named plaintiffs while the Motion to Compel Arbitration was pending. Indeed, in their Motion for Leave and Reply papers, they had the opportunity to (and did) present arguments regarding arbitration. Thus, they have had their day in court and are bound by the *Osterer* Arbitration Order.

*Finally*, because the *Baratta* Complaint is identical to the *Martin* Complaint and the Plaintiffs are represented by the same counsel, collateral estoppel equally applies to *Baratta*. Indeed, Plaintiffs' Counsel agreed that the only difference is that *Baratta* added "two state statutory claims" [LaVigne Decl. Ex. 4 (May 19, 2025, Status Conference Tr.) at 10:16-19].

Accordingly, Plaintiffs should be precluded from re-litigating the issue of arbitrability which was already decided by the *Osterer* Arbitration Order.

### D.    BAM and Mr. Zhao May Invoke the Arbitration Provision to Compel Plaintiffs to Arbitrate

A plaintiff bound by an arbitration agreement must arbitrate claims against a nonsignatory defendant if those claims are "both based on the same facts" and "inherently inseparable from the alleged" misconduct by a signatory. *Physician Consortium Servs., LLC v. Molina Healthcare, Inc.*, 414 F. App'x 240, 243 (11th Cir. 2011); *Caporicci U.S.A. Corp. v. Prada S.p.A.*, 2018 WL 2264194 at *3 (S.D. Fla. May 7, 2018); *accord Herrera v. West Flagler Assocs., Ltd.*, 2017 WL 9324515, at *5 (S.D. Fla. Apr. 5, 2017). This rule exists for good reason: requiring arbitration of interrelated claims against non-signatories prevents plaintiffs from "attempting an 'end run'" around their obligation to arbitrate. *Physician Consortium Servs.*, 414 F. App'x at 243.

The Court should require Plaintiffs to arbitrate their claims against BAM and Mr. Zhao because there is no dispute that the claims against BAM and Mr. Zhao are "based on the same facts" and "inherently inseparable from the alleged" misconduct asserted against BHL. Indeed, Plaintiffs allege that all of the Defendants were part of the same alleged conspiracy giving rise to their claims, and there are no independent allegations against BAM or Mr. Zhao. [*See e.g., Martin* Compl ¶ 192; *Baratta* Compl. ¶ 242.] For this exact reason, the Court held that Plaintiffs should be compelled to arbitrate against BAM, and it should again compel all parties to arbitrate Plaintiffs' claims. [*Osterer* Arbitration Order at 11 n. 6.]

## IV.     CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Compel Arbitration and compel Plaintiffs to arbitrate their claims pursuant to the Terms, and stay the proceedings.

## V.     REQUEST FOR HEARING

Pursuant to S.D. L.R. 7.1(b)(2), Defendants respectfully request oral argument on this motion. Given the different legal issues in the motion, Defendants believe that an opportunity to address any questions the Court may have concerning these issues may assist the Court. Defendants estimate that ninety minutes will be a sufficient amount of time.

## VI.   S.D. FLA. L.R. 7.1(A)(2) CERTIFICATION

Pursuant to S.D. L.R. 7.1(a)(2), counsel have met and conferred and were unable to come to an agreement on the requested relief herein.

Dated: July 25, 2025

By: */s/ Aaron S. Weiss*

Aaron S. Weiss (FBN 48813)
aweiss@carltonfields.com
Carlton Fields, P.A.
700 N.W. 1st Ave., Ste. 1200
Miami, Florida 33136
Telephone: (305) 530-0050

Christopher N. LaVigne (*pro hac vice*)
christopher.lavigne@withersworldwide.com
Tyler Goss (*pro hac vice*)
tyler.goss@withersworldwide.com
Withers Bergman LLP
430 Park Avenue, 10th Floor
New York, New York 10022
Telephone: (212) 848-9800

Kimberly Pallen (*pro hac vice*)
kimberly.pallen@withersworldwide.com
909 Montgomery Street, Suite 300
Withers Bergman LLP
San Francisco, California 94133
Telephone: (415) 872-3200

Vahe Mesropyan (*pro hac vice*)
vahe.mesropyan@withersworldwide.com
10250 Constellation Blvd., Suite 1400
Withers Bergman LLP
Los Angeles, California 90067
Telephone: (310) 277-9930

*Attorneys for Defendant Binance Holdings, Ltd. d/b/a Binance*

By: */s/ Daniel Stabile*

Daniel Stabile (FBN 95750)
dstabile@winston.com
Gabriela Plasencia (FBN 115788)
gplasencia@winston.com
Winston & Strawn LLP
200 S. Biscayne Blvd., Suite 2400
Miami, Florida 33131
Telephone: (305) 910-0500

Thania Charmani (*pro hac vice*)
acharmani@winston.com
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4196
Telephone: (212) 294-6700

*Attorneys for Defendant BAM Trading Services Inc. d/b/a/ BINANCE.US*

By: */s/ Harold S. Vogel, Jr.*

Harold S. Vogel, Jr. (FBN 432784)
Email: hvogel@dickinson-wright.com
Dickinson Wright PLLC
350 E. Las Olas Blvd., Ste 1750
Fort Lauderdale, Florida 33301
Telephone: (954) 991-5420
Email: hvogel@dickinson-wright.com

*Attorneys for Defendant Changpeng Zhao*

20