**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-22100-RAR**
**Case No. 25-cv-22202-RAR**

**PHILIP MARTIN**, *et al.,*
*individually and on behalf of*
*all others similarly situated,*

       Plaintiffs,

v.

**BINANCE HOLDINGS, LTD.**
*d/b/a* **BINANCE**, *et al.*

       Defendants.
_____/

**CHARLES BARATTA**, *et al.,*
*individually and on behalf of*
*all others similarly situated,*

       Plaintiffs,

v.

**BINANCE HOLDINGS, LTD.**
*d/b/a* **BINANCE**, *et al.*

       Defendants.
_____/


**<u>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT .........................................................................................................2

     A.     The *Osterer* Arbitration Order Applies to *Martin* and *Baratta* Because All Three Cases are Based on the Same Factual Predicate and Underlying Issues ............................................................................................................2

     B.     Plaintiff's Policy Arguments Are Meritless and Do Not Alter the Force and Effect of the *Osterer* Arbitration Order ...........................................................5

         1.     Plaintiffs' Policy Arguments Must Go to the Arbitrator ...........................5

         2.     The Terms Are Not Procedurally or Substantively Unconscionable ..........5

         3.     The Effective Vindication Argument Fails Because This Court Will Retain Jurisdiction and Provide Plaintiffs With a Subsequent Opportunity for Review .........................................................................8

         4.     Plaintiffs' Illegality Argument is a Red Herring .....................................10

III.    CONCLUSION ....................................................................................................10

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Bielski v. Coinbase, Inc.*
  87 F.4th 1003 (9th Cir. 2023) .................................................................5

*Cruz v. Cingular Wireless, LLC,*
  648 F.3d 1205 (11th Cir. 2011)..............................................................5

*Fred Lurie Assocs., Inc. v. Glob. All. Logistics, Inc.*,
  453 F.Supp.2d 1351 (S.D. Fla. 2006), *order clarified*, 2006 WL 3626296
  (S.D. Fla. Aug. 15, 2006) .......................................................................6

*Green Tree Fin. Corp.-Alabama v. Randolph,*
  531 U.S. 79 (2000) .................................................................................8

*Kakawi Yachting, Inc. v. Marlow Marine Sales, Inc.*,
  2014 WL 12650701 (M.D. Fla. Oct. 3, 2014) .......................................3

*Lambert v. Signature Healthcare*, LLC,
  2022 WL 2571959 (11th Cir. July 8, 2022) ..........................................5

*Lee v. Foris Dax, Inc.*,
  2025 WL 2578239 (N.D. Cal. Sep. 5, 2025) .........................................3

*Lindo v. NCL (Bahamas), Ltd.*,
  652 F.3d 1257 (11th Cir. 2011)...........................................................8, 9

*Lipcon v. Underwriters at Lloyd's, London,*
  148 F.3d 1285 (11th Cir. 1998)..............................................................9

*P & S Bus. Machs., Inc. v. Canon, USA, Inc.*
  331 F.3d 804 (11th Cir. 2003) ...............................................................7

*Payne v. Savannah Coll. of Art & Design, Inc.*,
  81 F.4th 1187 (11th Cir. 2023) ...........................................................7, 8

*Rent–A–Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010)..................................................................................5

*Ronderos v. USF Reddaway, Inc.*,
  114 F.4th 1080 (9th Cir. 2024) ..............................................................7

*Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*,
  2019 WL 3503109 (N.D. Cal. Aug. 1, 2019)  ........................................3

**State Cases**

*FI-Tampa, LLC v. Kelly-Hall*,
    135 So.3d 563 (Fla. 2d DCA 2014) .......................................................................9

*Just. Admin. Comm'n v. Wahid*,
    390 So.3d 705 (Fla. 3d DCA 2024) .......................................................................5

*Kendall Imports, LLC v. Diaz*,
    215 So.3d 95 (Fla. 3d DCA 2017) .........................................................................5

*Zephyr Haven Health & Rehab Ctr., Inc. v. Hardin ex rel. Hardin*,
    122 So.3d 916 (Fla. 2d DCA 2013) .......................................................................7

**Other Authorities**

GLOBAL ARBITRATION NEWS (Sep. 19, 2024), available at
    https://www.globalarbitrationnews.com/2024/09/19/hong-kong-arbitration-as-
    an-ideal-mechanism-for-resolving-crypto-disputes/ .............................................6

SILVER MILLER LAW, available at: https://www.silvermillerlaw.com/about-
    us/who-we-are/..........................................................................................................8

## I.      <u>INTRODUCTION</u>

This Court's *Osterer* Arbitration Order should apply with equal force here, and Plaintiffs' Opposition fails to raise any valid reason for a different outcome.[1] At the May 19, 2025, conference, this Court—like Judge Rothstein in the Western District of Washington, who transferred these cases here—noted the stark similarities between *Martin*, *Baratta*, and *Osterer*, and consolidated the *Martin* and *Baratta* cases for the issue of arbitrability. The Court noted that because it already decided the claims in *Osterer* are subject to arbitration, the *Martin* and *Baratta* parties should "focus on whatever daylight plaintiffs believe exists between" these cases "and the *Osterer* opinion," because "that's really all this comes down to."[2]

Plaintiffs have had numerous opportunities to distinguish their claims from those asserted in *Osterer*, including here and in other federal courts. Plaintiffs' Opposition[3] does not address the Court's "key question." The only distinguishing factor they point to is that, unlike *Osterer*, the *Martin* and *Baratta* Complaints include statutory, including RICO, claims. But Plaintiffs previously told this Court that those purported changes—which were all before the Court in the *Osterer* Proposed Amended Complaint—had "not alter[ed] the balance of the arguments for or against arbitration." [ECF No. 137 at 6-7 (citations omitted).] In that vein, this Court and Judge Rothstein have already rejected Plaintiffs' attempts to distinguish the *Martin* and *Baratta* Complaints from the *Osterer* Complaint. Indeed, Judge Rothstein transferred these cases to this Court because "Plaintiffs' attempts to distinguish this case from *Osterer* do not change the fact

---

[1] Other than terms defined herein, all capitalized terms retain the same meaning as in Defendants' Motion to Compel Arbitration [ECF No. 137] (the "Motion").

[2] Declaration of Christopher N. LaVigne, dated October 3, 2025 ("LaVigne Decl."), Ex. 1 at 18:18-21. The LaVigne Declaration and its Exhibit are attached hereto as Exhibit A.

[3] "Opposition" or "Opp." means the Opposition to Defendants' Motion [ECF No. 138].

that the two cases arise from the same factual predicate and concern the same central issue [as *Osterer*]." [ECF No. 75 at 6.] No matter what statutory claims Plaintiffs add to their complaints, they are still "suing Defendants for failing to exercise a right created by the Terms [freezing the hackers' accounts]—and for collecting funds pursuant to the Terms." [*Osterer* Arb. Order at 8.]

Recognizing they cannot meaningfully distinguish these cases from *Osterer*, Plaintiffs now pivot to arguments about the purported unconscionability of the Arbitration Provision. But the Delegation Provision makes clear that issues of purported unconscionability are reserved for the arbitrator and not this Court. Plaintiffs do not specifically attack the Delegation Provision and thus they have waived any challenge to its enforceability. Moreover, the weight of caselaw dictates what this Court already determined regarding the Terms and the Arbitration Provision: they are valid and binding.

Accordingly, Plaintiffs' claims must be compelled to arbitration.

## II.   ARGUMENT

### A.   The *Osterer* Arbitration Order Applies to *Martin* and *Baratta* Because All Three Cases are Based on the Same Factual Predicate and Underlying Issues

As explained in Defendants' Motion, *Martin* and *Baratta* are copycats of *Osterer*. [ECF No. 137 at 7-9.] All three complaints seek to hold the *same* defendants liable to the *same* putative class for the *same* purported wrongful acts. Specifically, each seeks to hold BAM, BHL, and Mr. Zhao[4] liable to a class of individuals whose cryptocurrency was stolen and transferred to Binance.com, under the theory that Defendants are responsible because they enabled hackers to launder cryptocurrency through Binance.com. [*Id.*] Indeed, in transferring these cases to this Court, Judge Rothstein recognized as much, noting that Plaintiffs' attempts in *Martin* and *Baratta* to alter

---

[4] Mr. Zhao was not initially named as a defendant in *Osterer*, but Osterer sought leave to add him.

their allegations to "distinguish this case from *Osterer* do not change the fact that the [c]ases arise from the same factual predicate and concern the same central issue." [ECF No. 75 at 6-7.]

Plaintiffs fail again to create any material distinction between these cases and *Osterer*. Plaintiffs do not dispute that all three are essentially the same case; instead they argue the Court should divert from its reasoning in the *Osterer* Arbitration Order because Plaintiffs here "base their claims on Defendants' RICO violations and failure to implement KYC and AML procedures as required by the BSA." [Opp. at 7.][5] However, Plaintiffs made the same argument in *Osterer*, and this Court explicitly considered and rejected it. [*See Osterer* Arb. Order at 10-11.] Plaintiffs argue that by adding a RICO claim and state claims, the *Osterer* Arbitration Order's reasoning does not apply here, but they fail to provide any cogent analysis why alleging additional causes of action *based on the same underlying facts and purported wrongful acts* should render a different result. Indeed, Judge Rothstein aptly recognized that adding new causes of action does not change the fact that the cases are substantially similar. [ECF No. 75 at 5-7; *see also Kakawi Yachting, Inc. v.*

---

[5] Notably, Plaintiffs cannot base their claims on the BSA. *Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, 2019 WL 3503109, at *7 (N.D. Cal. Aug. 1, 2019) ("While [the BSA and Patriot Act] provide for civil and criminal penalties, a defendant's liability [is to the government]. For this reason, courts are unanimous in holding that there is no private right of action under the BSA or Patriot Act.") (citing cases). Plaintiffs mischaracterize the holding in *Lee v. Foris Dax, Inc.*, 2025 WL 2578239, at *11 (N.D. Cal. Sep. 5, 2025). There, plaintiff did not allege a claim directly under the BSA. Instead, the court found plaintiff's claim under California's Unfair Competition Law premised on Crypto.com's alleged failure to adhere to BSA obligations were sufficiently plausible to survive a motion to dismiss. The court did not address the issue this Court and Judge Rothstein already decided: no matter what statute Plaintiffs' trot out, the legal theory and facts underlying Plaintiffs' claims derive from the Terms, not the BSA. [*Osterer* Arb. Order at 10-11 ("[Plaintiffs'] particular allegation regarding Defendants' failure to freeze the deposited funds has no connection to Defendant's failure (or statutory obligation) to properly identify customers or trace the origin of deposited funds.").] Further, Plaintiffs' assertion that "Defendants . . . refused to comply with the [BSA] and other U.S. laws, or implement basic [KYC] or [AML] policies," cannot reasonably include BAM. Plaintiffs themselves concede that BAM's U.S. platform was created to register with FinCEN and comply with KYC and BSA requirements. (*Martin* Compl. ¶¶ 24, 128.)

*Marlow Marine Sales, Inc.*, 2014 WL 12650701, at *8 (M.D. Fla. Oct. 3, 2014) (nonsignatory estopped from avoiding arbitration because, "[r]egardless of how such is couched, the allegations relate to and derive from the [agreement.]").

Plaintiffs also repeat the argument that they raised in *Osterer*, *i.e.*, that they never agreed to the Terms (so no contract exists) and thus equitable estoppel does not bind them because they are not relying on the Terms. [Opp. at 4-7.] But, as in *Osterer*, Plaintiffs do not (and cannot) dispute that for the hackers to deposit the purportedly stolen assets into a Binance.com account, they must have created accounts and agreed to the Terms. [*Osterer* Arb. Order at 7 ("Here, the parties agree that it was the unknown hacker, not Plaintiff, who agreed to the Terms containing the Arbitration Provision."); Fracolli Decl. ¶¶ 3-7.] Thus, Defendants have carried their burden to show a valid, enforceable arbitration provision exists by virtue of the hackers using the Binance.com exchange.[6] And, again, because Plaintiffs' claims against BHL, for failing to freeze the purportedly stolen funds due to a desire to collect transaction fees, derive from those Terms, Plaintiffs are bound to the Terms by equitable estoppel. [*Osterer* Arb. Order at 10-11; ECF No. 75 at 6-7.]

At bottom, Plaintiffs have failed to show any "daylight [that] exists between the *Martin* case, the [*Baratta*] case, and the *Osterer* opinion." [LaVigne Decl., Ex. 1 (May 19, 2025, Status Conference Tr.) at 18:18-20.] Accordingly, just as the Court did in *Osterer*, the Court should compel *Martin* and *Baratta* to arbitration.

_____

[6] Four of the *Baratta* Plaintiffs allege that their crypto assets were stolen in 2023 and "July-December 2024," which is "one to two years after the June 2022 Terms," [Opp. at 6 n.7]. They argue Defendants have not shown what Terms were in effect at that time. Not so. Defendants offered Terms which were in effect in 2023 and 2024 as support in their prior motion to compel in *Martin*, which contain the same Arbitration and Delegation Provisions. [*See* ECF No. 68-10 (Terms, last revised June 3, 2024, retrieved on January 13, 2025).]

**B.**      **Plaintiff's Policy Arguments Are Meritless and Do Not Alter the Force and Effect of the *Osterer* Arbitration Order**

**1.**      **Plaintiffs' Policy Arguments Must Go to the Arbitrator**

Plaintiffs raise three policy arguments to avoid arbitration: unconscionability, effective vindication, and illegality. If these arguments are not already waived, they are impermissible. When a delegation provision requires questions of arbitrability to be decided by an arbitrator (as here),[7] "courts only retain jurisdiction to review a challenge to [the delegation provision itself]." *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1303 (11th Cir. 2022). In conducting this limited review, the Court must "ensure that [Plaintiffs'] challenge asserted *really* is about the delegation agreement." *Id.* at 1304 (emphasis in original). Rather than identifying any flaws specific to the Delegation Provision, Plaintiffs' policy arguments solely attack the Arbitration Provision. Eleventh Circuit case law requires that the "'substantive nature of the party's challenge meaningfully goes to the parties' precise agreement to delegate[.]'" *Id.* Accordingly, the Delegation Provision must be enforced. *See Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 73-74 (2010) (enforcing delegation provision when arguments were not directed specifically at that provision).

**2.**      **The Terms Are Not Procedurally or Substantively Unconscionable**

Plaintiffs' argument that the Arbitration Provision should be invalidated because it is a contract of adhesion is not supported by law. While adhesion contracts contain "some level of procedural unconscionability," *Bielski v. Coinbase, Inc.* 87 F.4th 1003, 1014 (9th Cir. 2023), they are routinely enforced. *See, e.g.*, *Lambert v. Signature Healthcare*, LLC, 2022 WL 2571959, at *6

---

[7] There is a delegation provision in the Terms as well as in the HKIAC Rules (the "Delegation Provision"), which delegate questions concerning scope or validity of the Arbitration Provision to the arbitrator. [*See* Terms § X.2; *e.g.*, HKIAC Art. 19.2.]

(11th Cir. July 8, 2022); *Just. Admin. Comm'n v. Wahid*, 390 So.3d 705, 711 (Fla. 3d DCA 2024); *Kendall Imports, LLC v. Diaz*, 215 So.3d 95, 110 (Fla. 3d DCA 2017). Indeed, consumer contracts are almost universally "adhesive," yet routinely enforced to compel arbitration. *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1211 (11th Cir. 2011).

Nor should the Arbitration Provision be invalidated because, as Plaintiffs argue, they "had no possible reason to know they would be forced to arbitrate claims[.]" [Opp. at 10.] This simply repeats Plaintiffs' complaint that because they did not sign the Terms they should not be bound by them, and should be rejected for the same reason this Court compelled Osterer to arbitrate. [*Supra* § II.A.] As this Court previously noted, "the parties agree that it was the unknown hacker, not Plaintiff[s], who agreed to the Terms containing the Arbitration Provision." [*Osterer* Arb. Order at 7.] That Plaintiffs were unaware of the Arbitration Provision is irrelevant to the Court's equitable estoppel analysis. [*Id.* at 6-12.][8]

Neither is the Arbitration Provision substantively unconscionable. *First*, Plaintiffs allege the Terms' selection of Hong Kong as the venue exists solely to insulate Defendants from liability, purportedly because Defendants are not citizens of Hong Kong. [Opp. at 11.] But this is not the appropriate inquiry. Plaintiffs' speculative claim about Defendants' relation to Hong Kong, does not meet their "heavy burden [to show] that the forum selection clauses are unreasonable and should be set aside." *Fred Lurie Assocs., Inc. v. Glob. All. Logistics, Inc.*, 453 F.Supp.2d 1351, 1357 (S.D. Fla. 2006), *order clarified*, 2006 WL 3626296 (S.D. Fla. Aug. 15, 2006). In fact, with

---

[8] Plaintiffs' citation to *Lochan v. Binance Holdings Ltd.*, 2023 ONSC 6714 (CanLII)) is irrelevant. [Opp. at 10.] That case concerns the Canadian law of unconscionability, and is based upon Canadian public policy—neither of which is at issue here. [ECF No. 140-4 ¶¶ 36, 52.] Placing any reliance on *Lochan* would contravene and undermine the FAA and United States policy regarding arbitration.

operations globally, BHL's choice of Hong Kong is both rational and commercially sensible.[9]

*Second*, Plaintiffs' argument that the Arbitration Provision is unconscionable because the "Terms establish a unilateral one-year limit to bring *any claim* against Binance" is likewise meritless. [Opp. at 12.] Plaintiffs omit that the Terms also expressly state that "[i]f applicable law prohibits a one-year limitation period for asserting claims, any claim must be asserted within the shortest time period permitted by applicable law." [Terms at 23.][10]

*Third*, Plaintiffs' argument that the Arbitration Provision is unconscionable because of the cost-shifting provision is speculative and unsupported. [Opp. at 11-12.][11] Generally, "[t]he financial difficulty that a party might have in litigating in the selected forum is not a sufficient ground by itself for refusal to enforce a valid forum selection clause." *P & S Bus. Machs., Inc. v. Canon, USA, Inc.* 331 F.3d 804, 807 (11th Cir. 2003). "[F]or [Plaintiffs] to prove that [the Arbitration Provision] is unconscionable because of the agreement's cost-shifting provision, [they] must provide evidence of (1) the amount of fees [they are] likely to incur and (2) [their] inability to pay those fees." *Payne v. Savannah Coll. of Art & Design, Inc*., 81 F.4th 1187, 1196 (11th Cir. 2023) ("*Payne*") (cleaned up).

---

[9] Hanusch, P. "Hong Kong arbitration as an ideal mechanism for resolving crypto-disputes," GLOBAL ARBITRATION NEWS (Sept. 19, 2024), available at: https://www.globalarbitrationnews.com/2024/09/19/hong-kong-arbitration-as-an-ideal-mechanism-for-resolving-crypto-disputes/.

[10] Plaintiffs' reliance on *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1094-95 (9th Cir. 2024) is misplaced. There, the court applied California law and held the time limit rendered the arbitration provision unconscionable because it deprived plaintiff of tolling arguments. In contrast, the Terms toll the one-year period until "the party asserting the claim first knows or *reasonably should know* of the act, omission or default giving rise to the claim." [Terms at 23.]

[11] Plaintiffs' Washington cases are inapplicable. [Opp. at 12.] The one Florida case Plaintiffs cite helps Defendants' position. *Zephyr Haven Health & Rehab Ctr., Inc. v. Hardin ex rel. Hardin*, 122 So.3d 916 (Fla. 2d DCA 2013) (holding the "alleged inability to pay the cost of arbitration was insufficient to establish that arbitration agreement was unconscionable.").

Plaintiffs have not presented any evidence of their inability to pay costs. Nor have they shown that they *will* incur costs. The only evidence Plaintiffs provide is the Wong Declaration, which states the "arbitral tribunal <u>*may*</u> make an order requiring a party to provide security." [ECF No. 139 ("Wong Decl.") ¶ 28 (citing HKIAC Article 24).] But the Wong Declaration conveniently omits that pursuant to HKIAC Article 34 the tribunal (i) may *limit* the recoverable costs of the arbitration and (ii) may apportion all or part of the costs *only if* the tribunal "determines that apportionment is reasonable." [HKIAC Art. 34.2, 34.3.] Moreover, as advertised on Plaintiffs' counsel's website, Plaintiffs will not be required to pay costs unless they prevail.[12] Thus, all Plaintiffs have shown is that they *may* incur costs, which is insufficient to invalidate the Arbitration Provision. *Payne*, 81 F.4th at 1196-97 ("risk" of upfront costs does not demonstrate Plaintiffs "will incur those costs"); *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000) ("The 'risk' that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement."). Finally, Plaintiffs' argument that the Arbitration Provision is unconscionable because they *may* end up being liable for Defendants' costs was rejected by *Payne*: "[t]he 'problem' for [Plaintiffs] is that [they] might win. And if [they] were to prevail, [Defendants] would be required to pay for the arbitration." *Payne*, 81 F.4th at 1196-97.[13]

> ### 3.   The Effective Vindication Argument Fails Because This Court Will Retain Jurisdiction and Provide Plaintiffs With a Subsequent Opportunity for Review

---

[12] "Who We Are," SILVER MILLER LAW, available at: https://www.silvermillerlaw.com/about-us/who-we-are/ ("If we are not successful in helping recover money or property for our clients in a contingency-fee case, they do not have to pay us a fee[,]" and that "we only get paid if we have successfully secured for our clients actual, demonstrable recoveries.").

[13] Because this substantive unconscionability argument overlaps with Plaintiffs' effective vindication argument, Plaintiffs' arguments regarding the potential costs being more than a potential award are addressed in Section II.B.3 *infra* at 9-10.

Plaintiffs' attempt to invalidate the Arbitration Provision based on the effective vindication doctrine also fails. As a threshold issue, the doctrine does not apply here because this Court will retain jurisdiction over the matters and there will be a subsequent opportunity for review at the award-enforcement stage. *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1269 (11th Cir. 2011) (effective vindication doctrine applies only if there is "no subsequent opportunity for review."). Plaintiffs' argument also fails on the merits.

*First*, they argue that the Terms' choice of Hong Kong law prohibits them from pursuing their statutory claims in arbitration. [Opp. at 14.] But Plaintiffs also do not demonstrate that Hong Kong law would deny them remedies similar to those they seek here. *Lindo*, 652 F.3d at 1269; *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285 (11th Cir. 1998) (in case where plaintiff asserted statutory claims under the Securities Exchange Act, and choice of law and forum provisions which provided for application of English law, court found the provisions enforceable "since English law provided adequate remedies to vindicate policies underlying U.S. securities law"); *see generally Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013). Indeed, as the Eleventh Circuit held, "choice-of-law clauses may be enforced even if the substantive law applied in arbitration potentially provides reduced remedies . . . than those available under U.S. law[.]" *Lindo*, 652 F.3d at 1269 (11th Cir. 2011).

*Second*, Plaintiffs argue the effective vindication doctrine invalidates the Arbitration Provision because some of the Plaintiffs' or Class members' costs may exceed their potential award. But they provide only one Plaintiff as an example. Plaintiff Viola alleges she lost only $9,717 and according to Mr. Wong, her fees will be more than her award. This again is speculative because (1) the HKIAC may reduce the costs, and (2) there is no indication that Plaintiffs are paying any costs. In any event, as clearly espoused by the Supreme Court, "the fact that it is not

9

worth the expense involved in proving a statutory remedy does not constitute the elimination of the right to pursue that remedy." *Italian Colors*, 570 U.S. at 236; *FI-Tampa, LLC v. Kelly-Hall*, 135 So.3d 563, 568 (Fla. 2d DCA 2014) (finding no evidence "that the costs of arbitration were so clearly prohibitive as to prevent any resident of the nursing home from pursuing her statutory remedies.").[14]

### 4.    Plaintiffs' Illegality Argument is a Red Herring

Plaintiffs curiously argue that enforcing the Terms "against any U.S. residents (including Plaintiffs and the Class)," would be illegal because "Binance admitted and pleaded guilty to conspiring to conduct, and conducting, an unlicensed MTB in the U.S. in violation of federal law." [Opp. at 13.] Plaintiffs' argument is incoherent (and appears designed to get a liability finding from the Court on a motion to compel) and irrelevant to the issue of arbitrability. The only relevant inquiry is whether Plaintiffs' claims rely on the Terms. As explained above, this Court and Judge Rothstein have already held that they do, and therefore they must arbitrate their claims.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendants' Motion to Compel.

---

[14] Moreover, as the Court is aware, the Osterer Arbitration in Hong Kong has been stayed pending resolution of Defendants' instant Motion. [*Osterer*, ECF No. 96 at 1-2.] Indeed, if the Court compels Plaintiffs to arbitration as well, it may impact "the parties' arbitration strategies," which may be altered to "promot[e] efficiencies and preserv[e] resources." [*Id.* at 2.]

Dated: October 3, 2025

By: */s/ Aaron S. Weiss*

Aaron S. Weiss (FBN 48813)
aweiss@carltonfields.com
Carlton Fields, P.A.
700 N.W. 1st Ave., Ste. 1200
Miami, Florida 33136
Telephone: (305) 530-0050

Christopher N. LaVigne (*pro hac vice*)
christopher.lavigne@withersworldwide.com
Tyler Goss (*pro hac vice*)
tyler.goss@withersworldwide.com
Withers Bergman LLP
430 Park Avenue, 10th Floor
New York, New York 10022
Telephone: (212) 848-9800

Kimberly Pallen (*pro hac vice*)
kimberly.pallen@withersworldwide.com
909 Montgomery Street, Suite 300
Withers Bergman LLP
San Francisco, California 94133
Telephone: (415) 872-3200

Vahe Mesropyan (*pro hac vice*)
vahe.mesropyan@withersworldwide.com
10250 Constellation Blvd., Suite 1400
Withers Bergman LLP
Los Angeles, California 90067
Telephone: (310) 277-9930

*Attorneys for Defendant Binance Holdings, Ltd. d/b/a Binance*

By: */s/ Daniel Stabile*

Daniel Stabile (FBN 95750)
dstabile@winston.com
Gabriela Plasencia (FBN 115788)
gplasencia@winston.com
Winston & Strawn LLP
200 S. Biscayne Blvd., Suite 2400
Miami, Florida 33131
Telephone: (305) 910-0500

Thania Charmani (*pro hac vice*)
acharmani@winston.com
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4196
Telephone: (212) 294-6700

*Attorneys for Defendant BAM Trading Services Inc. d/b/a/ BINANCE.US*

By: */s/ Harold S. Vogel, Jr.*

Harold S. Vogel, Jr. (FBN 432784)
Email: hvogel@dickinson-wright.com
Dickinson Wright PLLC
350 E. Las Olas Blvd., Ste 1750
Fort Lauderdale, Florida 33301
Telephone: (954) 991-5420
Email: hvogel@dickinson-wright.com

*Attorneys for Defendant Changpeng Zhao*

11