**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-22100-RAR**
**CASE NO. 25-CV-22202-RAR**

**PHILLIP MARTIN**, *et al.*,
*individually and on behalf of*
*all others similarly situated*,

      Plaintiffs,

v.

**BINANCE HOLDINGS LTD.**
*d/b/a* **BINANCE**, *et al.*,

      Defendants.

_____/

**CHARLES BARATTA**, *et al.*,
*individually and on behalf of*
*all others similarly situated*,

      Plaintiffs,

v.

**BINANCE HOLDINGS LTD.**,
*d/b/a* **BINANCE**, *et al.*,

      Defendants.

_____/

## <u>ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION</u>

**THIS CAUSE** comes before the Court upon Defendants Binance Holdings, Ltd. ("Binance"), BAM Trading Services Inc. ("BAM"), and Changpeng Zhao's Motion to Compel Arbitration ("Motion"), [ECF No. 137]. On July 31, 2024, the Court entered an Order Granting Defendants' Motion to Compel Arbitration in *Osterer v. BAM Trading Services Inc., et al*. Now before the Court is another Motion to Compel Arbitration in two consolidated cases arising from similar factual allegations. Plaintiffs argue that the inclusion of more Plaintiffs, a new Defendant,

and additional statutory causes of action commands the Court to reach a different result than in *Osterer*—but that is not so.

Having carefully considered the Motion, Plaintiffs' Response in Opposition, [ECF No. 138], Defendants' Corrected Reply in Support, [ECF No. 143], the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion, [ECF No. 137], is **GRANTED** for the reasons set forth herein.

## **BACKGROUND**

### I. *Osterer*

On July 31, 2024, the Court entered an Order Granting Defendants' Motion to Compel Arbitration ("*Osterer* Order") in a related case—*Osterer v. BAM Trading Services Inc., et al.*, No. 23-22083, ECF No. 71. *Osterer* involved a Class Action Complaint against Binance and BAM that asserted claims for conversion, aiding and abetting conversion, and unjust enrichment. *See Osterer*, ECF No. 1. The plaintiff, Michael Osterer, alleged that his and other class members' digital assets were stolen and laundered through Binance accounts due to Defendants' failure to comply with Know Your Customer ("KYC") and Anti-Money Laundering ("AML") protocols. *Id*. at ¶ 1. He further alleged that Defendants "unjustly enriched themselves by collecting significant fees on transactions involving Plaintiff's stolen cryptocurrency." *Id*.

Osterer had maintained an account with U.S.-based cryptocurrency exchange Coinbase, but he did not have an account with Binance or BAM—which are different exchanges. *Osterer*, ECF No. 1 at ¶ 76. He alleged that an unauthorized hacker infiltrated his Coinbase account and stole approximately 8 BTC and 449 ETH from him, which the hacker subsequently routed into several Binance accounts. *Id*. at ¶¶ 77–82. Then, the hacker allegedly withdrew the stolen funds from the Binance accounts and absconded with the money. *Id*.

Defendants Binance and BAM moved to compel arbitration on a theory of equitable estoppel, pointing to the Arbitration Provision[1] in Binance's Terms of Use. *See* Terms, *Osterer*, ECF No. 49-1 at § X.2. The Arbitration Provision required arbitration of any claims "arising in connection with or relating in any way to these Terms or to your relationship with Binance." *Id*. The Terms of Use also included a Delegation Provision,[2] providing that threshold questions as to the jurisdiction, applicability, or scope of the Arbitration Provision are also subject to mandatory arbitration. *Id*.

Osterer countered by arguing that the Terms of Service, and thus the Arbitration and Delegation Provisions included therein, did not apply to him as he was not a party to the underlying agreement. *Osterer*, ECF No. 52. Because a user agrees to the Binance Terms of Use by checking a box while creating their account, Osterer—who never had a Binance account and thus never agreed to the Terms of Use—maintained that he could not be bound by them. *Id*. Osterer further argued that his claims were rooted in the regulatory scheme under which Defendants operated (such as failing to maintain adequate KYC and AML protocols) and thus did not arise from or relate to the Terms of Use. *Id*. at 12–13.

The Court ultimately sided with Defendants and compelled arbitration. *See Osterer*, ECF No. 71. After finding that it had jurisdiction to determine the threshold issues regarding the validity

---

[1]  The Arbitration Provision states: "You and Binance Operators agree that, subject to paragraph 1 above, any dispute, claim, or controversy between you and Binance (and/or Binance Operators) arising in connection with or relating in any way to these Terms or to your relationship with Binance (and/or Binance Operators) as a user of Binance Services (whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and whether the claims arise during or after the termination of these Terms) will be determined by mandatory final and binding individual (not class) arbitration, except as set forth below under Exceptions to Agreement to Arbitrate."

[2]  The Delegation Provision states: "You and Binance Operators further agree that the arbitrator shall have the exclusive power to rule on his or her own jurisdiction, including without limitation any objections with respect to the existence, scope or validity of the Agreement to Arbitrate, or to the arbitrability of any claim or counterclaim . . . ."

of the Arbitration and Delegation Provisions, the Court held that there was a valid agreement to arbitrate under the doctrine of equitable estoppel. *Id*. The Court pointed out that "a party may compel arbitration against a non-signatory to a contract if the 'plaintiff is relying on a contract to assert its claims and [ ] the scope of the arbitration clause in that contract covers the dispute.'" *Id*. at 6 (quoting *Leidel v. Coinbase, Inc.*, 729 F. App'x 883, 887 (11th Cir. 2018)).

Notably, the Court was unpersuaded by Osterer's attempt to ground his claims in Defendants' failure to comply with KYC and AML rules. *Id*. at 8. Rather, the Court found that Osterer's claims derived from the Terms of Service, which broadly required arbitration of any claims "arising in connection with or relating in any way to these Terms." *Osterer*, ECF No. 71 at 10. Osterer's allegations involved Binance's failure to freeze the deposited funds, which would have "halted the further movement of his stolen property." *Id*. (cleaned up). Thus, his claims had a significant relationship to the Terms of Use because "determining whether Defendants had the ability and obligation to freeze funds will require referencing § II(D)(1) of the Terms." *Id*. The Court also pointed out that Osterer's claims were *not* rooted in Defendants' failure to properly identify customers or trace the origin of deposited funds, as required by KYC and AML protocols. *Id*.

On May 24, 2024, Osterer moved for leave to amend his Complaint. *Osterer*, ECF No. 62. He sought to add Binance founder and CEO Changpeng Zhao as a Defendant. *Id*. at 1. He also sought to add three plaintiffs—Phillip Martin, T.F. (Natalie) Tang, and Yatin Khanna—"who all have been injured by the same wrongful practices of Defendants as Plaintiff Osterer was." *Id*. Finally, he sought to add a claim for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962(c)-(d). *Id*. But the Court compelled arbitration on July 31, 2024, and in doing so, denied Osterer's request for leave to amend his Complaint as moot. *Osterer*, ECF No. 71.

## II. *Martin* and *Baratta*

Shortly after the Court entered its Order compelling arbitration in *Osterer*, two cases were filed in the Western District of Washington.  The first was filed on August 16, 2024—about two weeks after entry of the *Osterer* Order—and included the new defendant, new plaintiffs, and RICO claim that Osterer had unsuccessfully sought leave to add.  Indeed, Plaintiffs Philip Martin, T.F. (Natalie) Tang, and Yatin Khanna ("*Martin* Plaintiffs") filed a Class Action Complaint against Binance, BAM, and Zhao.  *Martin*, [ECF No. 1].

Like in *Osterer*, the *Martin* Plaintiffs alleged that their cryptocurrency was stolen from other exchanges and sent to Binance accounts.  *Id*. at ¶¶ 19–21.  As such, they allege that "Binance.com failed to apply KYC and AML procedures as required by statutory law to detect the lawful ownership of the cryptocurrency properly belonging to Plaintiffs or members of the Class." *Id*. at ¶ 22.  The *Martin* Complaint asserts three counts against Defendants: conversion and aiding and abetting conversion (which were also brought in *Osterer*), as well as a RICO claim.  *See generally Martin*, [ECF No. 1].

Then, on April 9, 2025, Plaintiffs Charles Baratta, Jason Rappaport, Donald Douty, Thomas Viola, and Hyacinth Ahuruonye ("*Baratta* Plaintiffs") filed a Class Action Complaint against the same three Defendants—Binance, BAM, and Zhao. *Baratta*, [ECF No. 1].  The *Baratta* Plaintiffs similarly allege that their cryptocurrency was stolen and sent to Binance accounts, and they also point to Binance's violations of KYC and AML protocols among other statutory obligations.  *See generally id*.  The *Baratta* Complaint asserts the same three counts as *Martin*— conversion, aiding and abetting conversion, and RICO—as well as two additional counts for violations of the California Unfair Competition Law ("UCL") and the Massachusetts Consumer Protection Act ("MCPA").  *Id*.

Due to their similarities to *Osterer*, both *Martin* and *Baratta* were transferred to this District from the Western District of Washington. *See Martin*, [ECF Nos. 75, 79]; *Baratta*, [ECF Nos. 14, 18]. In her Order Granting Defendants' Motion to Transfer or Compel Arbitration in *Martin*, Judge Barbara Rothstein held that the parties and issues in *Martin* were "substantially similar" to those in the first-filed *Osterer*. *Martin*, [ECF No. 75] at 4–7. Then, in *Baratta*, the parties filed a Stipulated Motion to Transfer, which Judge Rothstein also granted. *Baratta*, [ECF Nos. 12, 14]. While the cases were originally assigned to other judges in this District, both were promptly transferred to this Court. *Martin*, [ECF No. 79]; *Baratta*, [ECF No. 18]. The Court consolidated the cases on May 22, 2025 for purposes of Defendants' forthcoming Motion to Compel Arbitration. *Martin*, [ECF No. 108]; *Baratta*, [ECF No. 20].

## III.   Defendants' Motion to Compel Arbitration

Defendants filed their Motion to Compel Arbitration on July 25, 2025. *Martin*, [ECF No. 137]. Defendants argue that because *Martin* and *Baratta* are predicated on the same facts and concern the same issues as *Osterer*, Plaintiffs should likewise be compelled to arbitrate their claims. *Id*. at 14. Defendants further argue that Plaintiffs should be judicially estopped from asserting that their claims are different from those in *Osterer*, and that collateral estoppel principles preclude Plaintiffs from relitigating the issue of arbitrability because it was already decided in *Osterer*. *Id*. at 17, 19.

Plaintiffs raise several arguments in their Response. *Martin*, [ECF No. 138]. First, Plaintiffs assert that no valid arbitration agreement exists between Plaintiffs and Defendants—an argument that the Court rejected in *Osterer*. *Id*. at 13–15. Next, in an attempt to distinguish their cases from *Osterer*, Plaintiffs argue that equitable estoppel does not apply because Plaintiffs' claims derive from Defendants' statutory obligations. *Id*. at 15. Finally, Plaintiffs attack the arbitration agreement as unconscionable, illegal, and unenforceable. *See id*. at 17–26.

Defendants' Motion ultimately turns on whether the inclusion of new plaintiffs, a new defendant, and additional claims in *Martin* and *Baratta* necessitate a different result than the one reached in *Osterer* on the question of arbitrability.  But it does not, and the *Martin* and *Baratta* Plaintiffs must likewise arbitrate their claims.

## LEGAL STANDARD

The Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA").  Under the FAA, a district court must grant a motion to compel arbitration if it is satisfied that there is an "issue referable to arbitration under an agreement in writing for such arbitration[.]" *See* 9 U.S.C. § 3; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration . . . .").  "[A]ny doubts" concerning the arbitrability of a dispute "should be resolved in favor of arbitration[.]"  *Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1294 (11th Cir. 2022).   Under the FAA, a district court must compel arbitration if (1) a valid written agreement to arbitrate exists, (2) an arbitrable issue exists, and (3) the right to arbitrate has not been waived.  *Integrated Sec. Servs. v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1324 (S.D. Fla. 2009).

## ANALYSIS

**I.   As in *Osterer*, Plaintiffs are compelled to arbitrate their claims against Defendants pursuant to Binance's Terms.**

Defendants, pointing to this Court's analysis in *Osterer*, assert that a valid arbitration agreement exists and that Defendants did not waive their right to arbitrate, satisfying the first and third elements requiring arbitration.  Mot. at 15 (citing *Osterer* Order at 6–7).  Defendants also argue that the second element—whether an arbitrable issue exists—is also met because Plaintiffs'

claims, which derive from Binance's Terms, are subject to the Terms' Arbitration Provision under principles of equitable estoppel. Despite Plaintiffs' arguments to the contrary, Defendants are correct.

First, Plaintiffs argue that no valid arbitration agreement exists between Plaintiffs and Defendants because "Plaintiffs never created or owned Binance accounts, and therefore never agreed to the Terms."[3] Resp. at 13–14. However, the Court squarely rejected this argument in *Osterer*. *See Osterer* Order at 7–8. Indeed, under the doctrine of equitable estoppel, a party may compel arbitration against a non-signatory to a contract if the "plaintiff is relying on a contract to assert its claims and [ ] the scope of the arbitration clause in that contract covers the dispute." *Leidel*, 729 F. App'x at 887. Here, as in *Osterer*, Plaintiffs did not have Binance accounts and thus never agreed to the Terms. *See Martin*, [ECF No. 1] at ¶¶ 19–21; *Baratta*, [ECF No. 1] at ¶¶ 20–53. But Defendants can nevertheless compel arbitration against the non-signatory Plaintiffs if their claims rely on Binance's Terms and the Terms' arbitration clause covers the dispute. *Leidel*, 729 F. App'x at 887.

Plaintiffs argue that their claims derive from Defendants' statutory obligations, rather than Binance's Terms. Resp. at 15. This same argument, however, was rebuffed in *Osterer*, where the Court concluded that "Defendants' failure to freeze the deposited funds has no connection to

---

[3] Plaintiffs also maintain that Defendants have not shown a valid arbitration agreement exists between the parties on two evidentiary grounds. First, Plaintiffs assert that "Defendants have not even presented the full arbitration agreement for any date, as they failed to produce the 'Exceptions to Agreement to Arbitrate' section referenced in the arbitration clauses of the Terms." Resp. at 5 n.5. While the Terms make such a reference, it does not appear that the provision was omitted by Defendants. Moreover, the Court considered the Terms as produced in *Osterer* without any concern about their completeness.

Next, Plaintiffs claim that "even though Defendants have produced several agreements from April 20, 2020 to June 24, 2022, they have not established that any of those agreements were in effect with respect to any of the Plaintiffs . . . who had crypto laundered at Binance during 2023 or 2024." *Id*. at 6–7. But, as Defendants point out in their Reply, they produced a version of the Terms that were in effect in 2023 and 2024 in support of their Motion to Transfer, [ECF No. 68-10], which include the same Arbitration and Delegation Provisions. *See* Reply at 4.

Defendant's failure (or statutory obligation) to properly identify customers or trace the origin of deposited funds." *Osterer* Order at 10.  Thus, "determining whether Defendants had the ability and obligation to freeze funds will require referencing § II(D)(1) of the Terms." *Id.*

Here, the Court's inquiry centers on whether the *Martin* and *Baratta* Plaintiffs' inclusion of additional statutory claims alters this analysis.  It does not.  Despite Plaintiffs' addition of claims under RICO, the UCL, and the MCPA, *Martin* and *Baratta* are ultimately predicated on the same factual allegations as *Osterer*.  Thus, Plaintiffs' claims likewise arise in connection with or relate to Binance's Terms.

In evaluating whether a plaintiff's claims fall within the scope of an arbitration clause, courts look to the facts alleged in the complaint.  *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (citing *Doe v. Princess Cruise Lines, Ltd.,* 657 F.3d 1204, 1208 (11th Cir. 2011)).  This analysis involves evaluating the "true thrust" of the complaint, regardless of how the plaintiff "couches its allegations in various terms and theories of action." *Id*. at 1312 (cleaned up).  Here, Binance's Terms include a broad Arbitration Provision that covers "any dispute, claim, or controversy between you and Binance (and/or Binance Operators) arising in connection with or relating in any way to these Terms . . . whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory." *See* Terms at § X.2.[4]  Thus, Plaintiffs' claims are subject to arbitration if the factual allegations underlying them arise in connection with or relate to the Terms, regardless of how their legal theory is framed.

The *Martin* Plaintiffs' claims clearly arise in connection with or relate to the Terms in the same way as Osterer's claims.  Indeed, the *Martin* Complaint is nearly identical to the Complaint

---

[4]  Defendants attach various iterations of Binance's Terms to their Motion to Compel Arbitration.  *See* [ECF No. 137-1] at 194, 219, 242, 265, 288, 312, 335, 368, 394.  Defendants also produced a more recent version of the Terms with their Motion to Transfer.  *See* [ECF No. 68-10].

in *Osterer*, as illustrated by the redline Defendants attach to their Motion.  *See* [ECF No. 137-1] at 5.  To be clear, the *Martin* Plaintiffs attempt to distinguish their case from *Osterer* by removing the unjust enrichment claim and adding allegations that "Plaintiffs are not relying on any contracts or agreements entered into between Binance or BAM Trading (including Binance.US) and any users of Binance" because "Plaintiffs' claims are based on Binance and CZ, aided and abetted by BAM Trading, violating federal statutory obligations and engaging in the conversion of, and aiding and abetting the conversion of, cryptocurrency properly belonging to Plaintiffs and the members of the Class."  *Martin*, [ECF No. 1] ¶ 11.

But these modifications do not change the "true thrust" of the *Martin* Complaint—which remains the same as the *Osterer* Complaint.  *U.S. Nutraceuticals, LLC*, 769 F.3d at 1312.  Like Osterer, the *Martin* Plaintiffs allege that they were not Binance users who had their cryptocurrency stolen and laundered through Binance—which allowed Defendants to collect fees from transactions involving their stolen cryptocurrency.  *Martin*, [ECF No. 1] ¶¶ 19–22, 41.  And although the *Martin* Plaintiffs allege a RICO violation in place of unjust enrichment, the present inquiry turns on the underlying factual allegations—*not* the theories of action under which Plaintiffs couch their allegations.  *U.S. Nutraceuticals, LLC*, 769 F.3d at 1312.  The fact that Osterer sought leave to amend to add the new Plaintiffs, Defendants, and RICO claim to his own Complaint illustrates the lack of daylight between the two cases.  *See Osterer*, ECF No. 62.  Thus, the Court must likewise compel arbitration in *Martin* for the same reasons as in *Osterer*.

*Baratta* is no different, as it includes similarly situated Plaintiffs suing the same Defendants for the same conduct.  *See* [ECF No. 137-1] at 89 (providing a redline comparing the *Baratta* and *Osterer* Complaints).  *Baratta* similarly focuses on Defendants' collection of fees from transactions involving non-Binance-user Plaintiffs' stolen cryptocurrency, alleging that "Binance has a strong monetary incentive to encourage, facilitate, and allow as many transactions on its

exchange as possible, even transactions involving stolen cryptocurrency." *Baratta*, [ECF No. 1] ¶ 67. Despite its emphasis on KYC and AML procedures, and its three counts for statutory causes of action, the true thrust of the *Baratta* Complaint is nevertheless the same as *Osterer* and *Martin*. As such, the Court must also compel arbitration in *Baratta*.

> **II. Plaintiff's additional challenges are without merit because the Terms' Delegation Provision vests the arbitrator with the power to decide threshold issues of arbitrability.**

Plaintiffs also raise three contract-based arguments challenging the arbitration agreement itself. *First*, Plaintiffs argue that the arbitration agreement is both procedurally and substantively unconscionable. Resp. at 17–22. *Second*, Plaintiffs argue that Defendants are seeking to enforce an illegal contract, citing Binance's Plea Agreement with the Department of Justice over separate conduct. *Id*. at 22. *Third*, Plaintiffs argue that the doctrine of effective vindication applies, as the arbitration agreement prohibits Plaintiffs from pursuing their statutory claims under RICO, the UCL, and the MCPA. *Id*. at 22–26. But these arguments are for the arbitrator to resolve, as Binance's Terms—which Plaintiffs are subject to—include a Delegation Provision that vests the arbitrator with the power to decide these threshold issues of arbitrability.

"When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). "In those circumstances, a court possesses no power to decide the arbitrability issue." *Id*. at 68. Under Eleventh Circuit precedent, courts employ a two-step approach to determine whether an arbitrator should decide threshold issues of arbitrability. First, courts must "consider whether the parties clearly and unmistakably agreed to delegate questions of arbitrability to an arbitrator." *Attix*, 35 F.4th at 1296. Then, courts look at whether the party opposing arbitration specifically challenged the enforceability of the parties' delegation agreement. *Id*. If the parties agreed to delegate questions of arbitrability to an arbitrator *and* the

party opposing arbitration has not specifically challenged the enforceability of the delegation agreement, the court must "enforce the parties' delegation agreement as written and compel arbitration." *Id*.

Here, the Terms' Delegation Provision serves as a clear and unmistakable agreement to delegate questions of arbitrability to an arbitrator. The Court has already held that Plaintiffs are subject to Binance's Terms. *See supra* at 8. And the Terms include a Delegation Provision that provides "the arbitrator shall have the exclusive power to rule on his or her own jurisdiction, including without limitation any objections with respect to the existence, scope or validity of the Agreement to Arbitrate, or to the arbitrability of any claim or counterclaim." Terms at § X.2. Indeed, the Delegation Provision here is even more specific than the one in *Attix*, which the Eleventh Circuit deemed to be sufficiently clear and unmistakable. *Attix*, 35 F.4th at 1296–97 ("The arbitrator shall also decide what is subject to arbitration unless prohibited by law. The arbitration will be administered by American Arbitration Association ("AAA") under its Consumer Arbitration Rules,[5] which are available at https://www.adr.org/active-rules.").

Moreover, Plaintiffs' arguments do not specifically challenge the enforceability of the Delegation Provision. Rather, they attack the Arbitration Provision or Binance's Terms at large. A party may resist an arbitration agreement by asserting one of two types of challenges under § 2 of the FAA. The first type "challenges specifically the validity of the agreement to arbitrate," while the second "challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Rent-A-Ctr, W., Inc. v.*

---

[5] The *Attix* court noted that the AAA's Consumer Arbitration Rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *Attix*, 35 F.4th at 1297–98.

*Jackson*, 561 U.S. 63, 70 (2010) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)).  Only the first type of challenge may defeat a delegation provision.  *Id.*  Thus, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.*  That said, when the challenge to one part of the contract "applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024).

In *Osterer*, the Court held that it had jurisdiction to determine the validity of the Arbitration and Delegation Provisions.  *Osterer* Order at 4.  Specifically, the Court noted that by "disputing the very existence" of a valid agreement to arbitrate, plaintiff's challenge applied equally to the Arbitration and Delegation Provisions.  *Id*. at 6 (citing *Coinbase, Inc.*, 602 U.S. at 151).  A similar challenge to the validity or enforceability of a delegation provision occurred in *Parm v. Nat'l Bank of California, N.A.*, 835 F.3d 1331 (11th Cir. 2016).  There, the plaintiff contested the arbitration clause's provision that "any Dispute . . . will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules."  *Id*. at 1333.  The plaintiff argued that "the delegation clause is unenforceable because the arbitration agreement provides no available forum for an arbitrator to decide threshold issues of arbitrability," noting that the Cheyenne River Sioux Tribal Nation does not arbitrate disputes or have arbitration procedures.  *Id*. at 1135.  Because the plaintiff argued that the designated forum was illusory, she specifically contested the primary agreement to arbitrate *and* the delegation provision.  *Id*. at 1337.  In other words, plaintiff's challenges in both *Osterer* and *Parm* went directly to whether an arbitration could occur at all, thereby calling into question the entirety of the parties' agreement to arbitrate—and by extension, the parties' delegation agreement as well.

Conversely, general challenges to arbitration provisions that do not specifically implicate delegation provisions are for the arbitrator to resolve. This was the case in *Rent-a-Center*, where the plaintiff contested an arbitration agreement as unconscionable. *Rent-A-Ctr*, 561 U.S. at 73. Particularly, the plaintiff argued that the arbitration provision was one-sided in that it only covered claims that an employee would likely bring against Rent-a-Center, and that it required unconscionable fee-splitting arrangements and limitations on discovery. *Id*. The Supreme Court held that the plaintiff did not specifically contest the delegation provision, which he did not even mention, but instead assailed other provisions of the contract for imposing unconscionable arbitration procedures. *Id*. at 73–74. The Eleventh Circuit reached a similar conclusion *Attix*, where plaintiff's challenge involved whether the arbitration clause covered claims brought pursuant to the Dodd-Frank Act. 35 F.4th at 1307. The Eleventh Circuit held that "[b]y arguing that § 1639c(e)(3) [of the Dodd-Frank Act] gives him the right to prosecute his claims against Carrington in federal court, Attix is disputing the enforceability of the parties' *primary arbitration* agreement." *Id*. (emphasis added). The plaintiff's Dodd-Frank challenge did not concern the *delegation* agreement, which provided that an arbitrator shall determine his or her own jurisdiction to decide what is subject to arbitration. *Id*.

Thus, cases like *Rent-a-Center* and *Attix* concern challenges to the procedures and scope of the arbitration—threshold determinations that were reserved for an arbitrator pursuant to a delegation clause. Neither case addressed the validity or enforceability of the delegation clause at issue. And failure to do so requires a court to treat such a delegation agreement as valid under § 2 of the FAA and enforce it pursuant to §§ 3 and 4. *Attix*, 35 F.4th at 1304.

Here, Plaintiff's unconscionability, illegality, and effective vindication arguments address the parameters of the arbitration—rather than the foundational question of whether the arbitration can actually take place. For instance, Plaintiffs allege that the arbitration agreement is

substantively unconscionable because it exists solely to insulate Defendants from liability, and that it includes other substantively unconscionable mechanisms like the cost-splitting model.  Resp. at 19–22.   These challenges are analogous to the *Rent-a-Center* plaintiff's unconscionability arguments—which were not specific to the delegation provision and thus for the arbitrator to resolve.  *See Rent-A-Ctr*, 561 U.S. at 73–74.  And Plaintiffs' effective vindication arguments assert that the arbitration provision prevents Plaintiffs from pursuing statutory remedies under RICO, the UCL, and the MCPA.  Resp. at 22–26.  But, as with the Dodd-Frank challenge in *Attix*, this is a clear threshold dispute about what claims can be subject to arbitration.  *See Attix*, 35 F.4th 1307.  Pursuant to the Terms' Delegation Clause, these are all objections for Plaintiffs to raise before an arbitrator.

Plaintiffs also challenge Binance's Terms on procedural unconscionability and illegality grounds.  On procedural unconscionability, Plaintiffs essentially repackage their arguments that they cannot be bound by the Terms because they never agreed to them and lacked notice of the Arbitration Clause included therein.  Resp. at 17–19.  And on illegality, Plaintiffs argue that Binance's Terms are an unenforceable, illegal contract because of Binance's Plea Agreement with the Department of Justice for "conspiring to conduct, and conducting, an unlicensed [money transmitting business] in violation of federal law."  *Id*. at 22.

In general, "[a]rbitration provisions will be upheld as valid unless defeated by fraud, duress, unconscionability, or another 'generally applicable contract defense.'"  *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) (quoting *Rent-A-Ctr*, 561 U.S. at 67–68).  But "[w]hen an arbitration agreement contains a delegation provision and the plaintiff raises a challenge to the contract *as a whole*," review is committed to the arbitrator—unless the plaintiff has "'challenge[d] the delegation provision *specifically*.'"  *Id*. (quoting *Rent-A-Ctr*, 561 U.S. at 72).  Here, Plaintiffs raise generally applicable contract defenses against the Terms as a whole,

which do not specifically challenge the Delegation Provision. And the challenges Plaintiffs assert here do not "apply equally" to the arbitration agreement *and* the Delegation Provision. *Coinbase, Inc.*, 602 U.S. at 151.

By contrast, the challenge to the Terms in *Osterer* "applied equally" to the Arbitration and Delegation Provisions. *Osterer* Order at 5. There, Osterer maintained that he was not a party to the Terms *at all*, which directly implicated whether he fell under the ambit of the Arbitration *and* Delegation Provisions. *See id.* at 6. Accordingly, Osterer's attack on the Terms as a whole constituted a specific attack on the delegation provision in substance. *See Mod. Perfection, LLC v. Bank of Am., N.A.*, 126 F.4th 235, 243 (4th Cir. 2025) (explaining that while *Coinbase* "does not require that a party challenge *only* the . . . delegation provision," a party's challenge to the contract as a whole must still *specifically* implicate said provision (quoting *Coinbase, Inc.*, 602 U.S. at 151)).

Here, the Court lacks jurisdiction to hear Plaintiffs' procedural unconscionability and illegality arguments because, while they challenge the Terms as a whole, they do not mention or implicate the Delegation Provision at all. *See Lackie Drug Store, Inc. v. OptumRx, Inc.*, 143 F.4th 985, 998 (8th Cir. 2025) ("[U]nlike the plaintiff in *Coinbase*, Lackie has never challenged the delegation clause."); *Brown v. Santander Consumer USA Inc.*, No. 3:24-CV-00665-NJR, 2025 WL 2280559, at *9 (S.D. Ill. Aug. 8, 2025) (enforcing the delegation clause where plaintiff did not challenge the substance of the arbitration or delegation clauses but rather argued that the underlying contract was void in its entirety). Unlike in *Osterer* and *Parm*, these challenges only address the enforceability of the Terms in a general fashion; they do not challenge the delegation provision directly. Thus, it is within the province of an arbitrator to consider the Terms' overall enforceability—a quintessential threshold inquiry.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      The Motion, [ECF No. 137], is **GRANTED**.

2.      The *Martin* and *Baratta* Plaintiffs are **COMPELLED** to arbitrate their claims against Defendants pursuant to the Terms.

3.      This case is **STAYED** pending the conclusion of arbitration proceedings.

4.      The parties shall provide the Court with joint status reports every **sixty (60) days** regarding the status of arbitration proceedings.

5.      The Clerk shall **CLOSE** this case for administrative purposes only.

**DONE AND ORDERED** in Miami, Florida, this 16th day of March, 2026.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**